**Glen MILLER and Bonnie Miller, Appellants,**

**v.**

**FARM BUREAU TOWN & COUNTRY INSURANCE CO. OF MISSOURI, Respondent.**

**Nos. 22373, 22444.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 17, 1999.

Application for Transfer Denied
Jan. 11, 2000.

Gerald L. Thompson, Sinclair, Sawyer, Thompson, Haynes & Cowing, P.C., Kansas City, for appellants.

Jerry L. Reynolds, Ronald A. Conway, Reynolds & Conway, P.C., Springfield, for respondent.

JOHN E. PARRISH, Judge.

In No. 22373 Farm Bureau Town and Country Insurance Company of Missouri (Farm Bureau) appeals a judgment construing a policy of insurance it issued on property owned by Glen Miller and Bonnie Miller (collectively referred to in this opinion as plaintiffs) and awarding damages to plaintiffs on an action for breach of contract. No. 22444 is plaintiffs' cross-appeal. The cross-appeal is directed to the trial court's failure to include a line for pretrial interest on the form of verdict used at trial and the trial court's failure to amend its judgment to include pretrial interest. Plaintiffs are deemed appellants and Farm Bureau respondent in accordance with Rule 84.04(k). This court reverses and remands with directions and for new trial as to damages on plaintiffs' breach of contract action.

Plaintiffs owned a residence in Mountain View, Missouri. The property was insured by Farm Bureau. The residence and its contents were damaged by fire during the evening of October 16 and early morning of October 17, 1995. A fire occurred shortly before 8:00 p.m. October 16. It was extinguished. Plaintiffs, their son and other family members removed a number of personal items from the residence after the fire was extinguished. Another fire occurred at the residence about 2:00 a.m. The dwelling sustained substantial damage.

"Coverage A" of plaintiffs' policy is the coverage provided on their dwelling. The information page of the policy identifies what the policy includes. It states, with respect to Coverage "A":

| AMOUNT OF INSURANCE | DEDUCTIBLE PER OCCURRENCE |
|---|---|
| $98,000 | $250 |

-COVERAGES AND OPTIONS PROVIDED BY THIS POLICY ARE-
————SECTION I————
A. Dwelling 1, one family brick home in protection class 7,
includes level three protection,
replacement cost settlement,
Option A–Guaranteed Replacement Cost
Option B–Inflation Protection
Option D–Earthquake (5 percent deductible replaces Option D, page 13, in your policy booklet)

The part of the policy that explains optional coverage states, as to "Option A":

The following Optional Coverages apply only when shown on the Information Page. All provisions of this policy apply to each Option in this section unless otherwise modified by the terms within the specific option.

**OPTION A**

GUARANTEED BUILDING REPLACEMENT COVERAGE. **We** will settle covered losses to the dwelling under Coverage A at replacement cost without regard to the limit of liability. However, this guarantee does not apply:

1. to a loss which occurs within 59 days of the initial effective date of this policy, or

2. if **you** fail to notify **us** within 90 days of any additions to or remodeling of the dwelling which increases its re-

placement cost value by $5,000 or more. **You** must also pay any additional premium due for the increase in value.

When this guarantee does not apply (as described in 1 and 2 above), or **you** decide not to replace the dwelling at the same **insured premises, our** payment will not exceed the amount of insurance applying to the dwelling shown on the Information Page.

The insurance policy includes a section entitled "CONDITIONS – SECTION I." It includes in its paragraph 3 a provision entitled "SETTLEMENT AND VALUATION" that states:

. . .

Two valuation methods are available. The Information Page will show ACV meaning Actual Cash Value or RC meaning Replacement Cost as described in the following paragraphs:

ACV (Actual Cash Value): meaning the replacement cost of property less depreciation. However, the actual cash value shall not include:

1. that portion of any items [sic] value derived through age, history, rarity, or sentimental value. Including but not limited to antiques, memorabilia, souvenirs, collectors items, painting, etchings, pictures, tapestries, statuary, articles made of marble, bronzes, rare books and papers, porcelains or rare glassware;

2. that portion of value for tapes, records, films, or other magnetic recordings in excess of the original cost of the blank or commercially recorded or programmed item.

RC (Replacement Cost): meaning the cost to replace the destroyed or damaged property without deduction for depreciation, using material of equal quality but not necessarily identical materials. The type of material will be agreed upon by **you** and **us.**

However, this replacement cost does not apply and actual cash value settlement will be used:

1. if **you** and **we** cannot agree on the type of materials;

2. if property which because of age or condition has become obsolete or unusable for its originally intended purpose;

3. paintings, etchings, pictures, tapestries, statuary, articles made of marble, bronzes, antiques, rare books and papers, porcelains, rare glassware or any other articles which, because of their nature, cannot be replaced with new articles.

4. articles whose age or history contributes substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items.

5. **business** property and property of others; on or off the **insured premises.**

6. records, films, tapes or other magnetic recordings.

7. until the actual repair or restoration or replacement is completed. In the event **you** *do not decide to repair or replace the damaged, destroyed or stolen property, payment will be then made on an actual cash value basis. However,* **you** *may make a further claim within 180 days after the date of the loss for any additional payments.* [Emphasis in original.]

Plaintiffs filed a proof of loss with Farm Bureau and a claim under their insurance policy. Farm Bureau denied plaintiffs' claim. Plaintiffs then brought the breach of contract action that is the subject of these appeals. Farm Bureau counterclaimed seeking a declaration of plaintiffs' rights under the terms of the insurance policy in question. The respective actions were not severed. The trial court submitted plaintiffs' claim against Farm Bureau to a jury. Following a verdict on plaintiffs' claim, the trial court determined the issues presented in Farm Bureau's declaratory judgment action and entered judgment. At the time of trial, plaintiffs' resi-

dence had not been repaired, restored or replaced.

The trial court gave the following instruction to the jury regarding damages that could be awarded plaintiffs if the jury found for plaintiffs on their claim against Farm Bureau.

### INSTRUCTION NO. *9*

If you find in favor of Plaintiffs on their claim for damages, then you must award Plaintiffs the replacement cost but not less than the sum of $98,000.00 for the loss of plaintiffs' house and you must award Plaintiffs the sum of $73,-500.00 less depreciation, if any, for the loss of plaintiffs' personal property and you must award Plaintiffs such sum as you may find from the evidence that will fairly and justly compensate Plaintiffs for additional living expense.

The phrase "depreciation" as used in this instruction means and includes any reduction or lessening in value.

The jury was also instructed:

### INSTRUCTION NO. *10*

If you find in favor of Plaintiffs Glen and Bonnie Miller on their claim against Defendant Farm Bureau and you believe the conduct of Defendant Farm Bureau in refusing to pay the loss was without reasonable cause or excuse, then in addition to the damages to which you find Plaintiffs entitled for their loss, you may award Plaintiffs an additional amount as damages, not to exceed 20% of the first $1,500.00 of such loss and 10% of the amount of such loss in excess of $1,500 and a reasonable attorney's fee.

The jury found for plaintiffs on their claim against Farm Bureau. It awarded damages "[o]n the policy" of $279,200 and "[f]or attorney's fees" of $92,136, for total damages of $371,336.

In determining Farm Bureau's action for declaratory judgment, the trial court found the parties "entered into a contract for insurance." It concluded that "[t]he amount of insurance applying to the dwelling as shown on the Information Page was $98,000.00"; that the policy included "guaranteed building replacement coverage" set forth in the policy's "Option A." The trial court held:

The question presented to the court is whether the language [in Option A] acts to override the limits of the policy as provided in Section I, subparagraph 3, SETTLEMENT AND VALUATION. The court declares that the language of the policy, including Option A, allows plaintiffs to recover the replacement cost of their dwelling until such time as they decide not to replace at the same insured premises.

Replacement Cost under Section I, subparagraph 3 is defined as "the cost to replace the destroyed or damage [sic] property without deduction for depreciation, using material of equal quality but not necessarily identical materials. Replacement cost does not apply and actual cash value settlement will be used, ... 7. until the actual repair or restoration or replacement is completed. In the event you do not decide to repair or replace the damaged, destroyed or stolen property, payment will be then made on an actual cash value basis. However, you may make a further claim within 180 days after the date of the loss for any additional payments."

The trial court held that the policy provisions require "the policy holder make a decision not to replace the dwelling at the same insured premises." It concluded that the evidence at trial showed that plaintiffs had not made a decision to not replace the dwelling at the same insured premises; that, therefore, they were entitled to recover replacement cost for the dwelling without regard to the policy's limit of liability.

This opinion will first address Farm Bureau's points on appeal. Farm Bureau's Point I contends the trial court erred in declaring that the language of the insur-

ance policy allowed plaintiffs to recover the replacement cost of their dwelling until such time as they decided not to replace the dwelling. Point I asserts that the trial court further erred in giving Instruction No. 9 that directed the jury to award "the replacement costs but not less than the sum of $98,000 for the loss of plaintiffs' house."

■ In reviewing the issues directed to the declaratory judgment action, this court will sustain the judgment unless the judgment is without substantial evidence to support it, unless it is against the weight of the evidence or erroneously declares or applies the law. *Abco Tank & Mfg. Co. v. Federal Ins. Co.*, 550 S.W.2d 193, 197 (Mo. banc 1977); *Eaton v. State Farm Mut. Auto. Ins. Co.*, 849 S.W.2d 189, 191 (Mo. App.1993).

■ Interpretation of the meaning of an insurance policy is a question of law. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo.App.1988). "Insurance policies are contracts and the rules applicable to the construction of contracts are applicable to insurance policies." *Id.* "Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." *Luyties Pharmacal Co. v. Frederic Co., Inc.*, 716 S.W.2d 831, 835 (Mo.App. 1986). An unambiguous insurance policy is to be enforced according to its terms. *American States Ins. Co. v. Broeckelman*, 957 S.W.2d 461, 465 (Mo.App.1997).

■ In determining whether language in a policy is ambiguous, the words are tested in light of the meaning that would normally be understood by the layperson who bought and paid for the policy. *Kastendieck v. Millers Mut. Ins. Co.*, 946 S.W.2d 35, 39 (Mo.App.1997). An insurance policy is ambiguous if there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy. *Haggard Hauling & Rigging Co. v.*

*Stonewall Ins.*, 852 S.W.2d 396, 399 (Mo. App.1993).

■ Although Farm Bureau's policy is not a model of conciseness, it is not duplicitous, indistinct or uncertain. It provides "guaranteed building replacement coverage" under certain circumstances. Guaranteed replacement cost coverage, under the terms of the policy, provides for payment for covered losses without regard to the limit of liability otherwise imposed by the policy. That coverage does not apply, however, if the insured "decide[s]" not to repair, restore or replace the dwelling where it was originally located. In that event, Farm Bureau's liability under the terms of the policy is limited to the stated amount of coverage or, in the language of the policy, the "actual cash value" settlement amount, in this instance, $98,000.

The trial court held that the policy language "allow[ed] plaintiffs to recover the replacement cost of their dwelling *until such time as they decide not to replace the dwelling at the same insured premises*." (Emphasis added.) That holding conflicts with the express provision of the policy that appears in paragraph 3 of the "conditions" section under the heading "settlement and valuation." The policy states that the replacement cost method of settling and valuing a claim will not apply and actual cash value settlement will be used in certain circumstances. It identifies "until the actual repair or restoration or replacement is completed" as an instance when actual cash value settlement is used. The policy states, "In the event **you** *do not decide to repair or replace the damaged, destroyed or stolen property, payment will be then made on an actual cash value basis. However,* **you** *may make a further claim within 180 days after the date of the loss for any additional payments.*" (Emphasis in policy.)

■ In construing an insurance policy, all provisions should be given effect and a reasonable construction in light of the specific situation with which the parties are

dealing. *MFA Mut. Ins. Co. v. Dunlap*, 525 S.W.2d 766, 769 (Mo.App.1975). "[E]very clause in an insurance policy must be given some meaning if it is reasonably possible to do so, and ... conflicting provisions in insurance policies should be reconciled if it is possible to do so consistently with the intention of the parties as ascertained from the terms used." *Surface v. Ranger Ins. Co.*, 526 S.W.2d 44, 47 (Mo.App.1975). "[I]t is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them." *Brugioni v. Maryland Cas. Co.*, 382 S.W.2d 707, 710 (Mo.1964).

The trial court erroneously applied the law in that it failed to give meaning to the plain language of the policy that required completion of the repair, restoration or replacement of the destroyed or damaged property in order to recover replacement cost. The purpose of the replacement cost coverage was to make funds available that would enable plaintiffs to replace their destroyed or damaged premises at the insured location, notwithstanding that the value of those premises before the loss had been lessened by depreciation. Plaintiffs were not, however, entitled to more than the actual cash value of the destroyed or damaged premises until repair, restoration or replacement of those premises was completed.

Considering the intention of the parties as gleaned from the terms used in the policy, this court concludes that plaintiffs were entitled to receive the actual cash value of the damaged or destroyed premises up to the face amount of the coverage on the dwelling, i.e., its replacement cost

less depreciation; that if plaintiffs replaced the destroyed premises, they could make further claim within a limited time for additional costs incurred in repairing, restoring or replacing the property.[1] The trial court erred in holding that plaintiffs could recover an amount sufficient to replace the property until such time as plaintiffs decided not to replace the property.

The trial court's Instruction No. 9 was, likewise, erroneous. The jury was instructed, if it found in favor of plaintiffs on their claim for damages, to "award Plaintiffs the replacement cost" for the loss of their house without requiring a showing that the house had been repaired, restored or replaced at the insured premises. Point I of Farm Bureau's appeal is granted. The judgment must be reversed and remanded for new trial on the issue of damages in plaintiffs' action for breach of contract.[2]

■ Farm Bureau's Point II contends that the trial court erred in declaring as a matter of law that plaintiffs incurred a total loss to their personal property contents. Point II asserts that the part of Instruction No. 9 that instructed the jury to award plaintiffs the sum of $73,500, although there was evidence that plaintiffs did not sustain a total loss of the personal property that was the contents of the destroyed residence, was erroneous.

Plaintiffs argue that Instruction No. 9 was not erroneous in instructing the jury to award the face amount of coverage on contents ($73,500) less depreciation because the evidence included "80 pages of itemized descriptive information about the personal property" by way of Plaintiffs'

---

1. The purpose of replacement cost insurance and the rationale for requiring that there be no recovery for the part of a loss that exceeds the actual cash value of the loss absent replacement is exhaustively discussed in *Higgins v. Insurance Co. of North America*, 256 Or. 151, 469 P.2d 766, 771–74 (1970).

2. Farm Bureau's counterclaim for declaratory judgment was not severed for trial separate from plaintiffs' action for breach of contract, an action tried before a jury. Had the claims

been tried separately with the declaratory judgment claim resolved first, the trial court could have determined that there was no just reason for delay in entering judgment in the declaratory judgment action. *See* Rule 74.01(b). That determination could have been appealed and resolved before trial of the jury issues, thereby preventing the giving of an erroneous instruction and avoiding trying jury issues twice.

Exhibit No. 6. Plaintiffs further point to a statement by an adjuster that there was probably a total loss. Plaintiffs argue that this was sufficient evidence for the jury to "make the finding of fact of whether loss exceeded the policy limit of $73,500 and if any depreciation would cause the award to be lower than the policy limit of $73,500." Plaintiffs also argue that this issue was not preserved for appeal; that Farm Bureau did not object at trial to the part of Instruction No. 9 directed to the amount of damages to be assessed for the loss of personal property. Plaintiffs contend Farm Bureau's only objection was that the evidence was not sufficient to permit recovery for the loss. Plaintiffs argue that Farm Bureau may not now complain that the instruction was erroneous as to the amount of damages it directed the jury to award.

This court need not, and does not, address the argument that the damage issue as to the contents was not preserved for review. A new trial as to damages is required for the reasons discussed with respect to Farm Bureau's Point I. The issue to which Point II is directed will likely arise upon retrial. Because of its importance the issue will be addressed. *See Pollard v. Whitener*, 965 S.W.2d 281, 286 (Mo.App.1998).

The itemized descriptive information that plaintiffs assert warranted the damage award for loss to contents is an extension of the parties' testimony. "A jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part; just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case." *Burr v. Singh*, 362 Mo. 692, 243 S.W.2d 295, 298 (1951). Furthermore, there was evidence that items of undamaged personal property had been removed from the house after the first fire and that other items had been salvaged with little or no damage. Instruction No. 9 did not allow the jury to consider the possibility that the contents were not a total loss; that plaintiffs could have sustained damages to the contents of their residence of less than $73,500. *See* § 379.150, RSMo 1994; *Stevens v. Norwich Union Fire Ins. Co.*, 120 Mo.App. 88, 96 S.W. 684, 690 (1906).

Upon retrial if there is evidence that the contents were not totally destroyed, that the loss was less than the policy limits on the contents, the jury must have an opportunity to award damages of an amount less than the maximum coverage afforded by the insurance policy. *See Travelers Indem. Co. v. Woods*, 663 S.W.2d 392, 395–96 (Mo.App.1983). The jury should be so instructed. Farm Bureau's Point II is well taken.

Farm Bureau's Point III is directed to plaintiffs' claim for additional living expenses. Plaintiffs' insurance policy provides:

If a loss covered under Section I makes the **insured premises** uninhabitable, **we** cover any necessary increase in living expenses incurred by **you** so that **your** household can maintain its normal standard of living. . . .

Point III asserts that the trial court erred in admitting evidence of living expenses plaintiffs incurred after their residence was rendered uninhabitable. Farm Bureau argues that plaintiffs' evidence was not limited to expenses that increased following the fire. Farm Bureau argues that the evidence included the same living expenses plaintiffs were incurring before the fire. There is no assurance that these issues will be presented in the course of the new trial in the same context as in the original trial. For that reason, no purpose would be served by addressing the particular evidentiary issues Farm Bureau seeks to raise in Point III. This court notes, however, that the subject of allowances for additional living expenses under policy provisions similar to those in this case were addressed in *Meeker v. Shelter Mut. Ins. Co.*, 766 S.W.2d 733, 745 (Mo.App.

1989). *Meeker* may assist the trial court in addressing issues similar to those posed by Point III in the event they arise upon retrial.

■ Farm Bureau's Point IV argues that the trial court erred in submitting plaintiffs' claim for vexatious refusal to pay insurance proceeds. Farm Bureau asserts that it had reasonable cause and excuse to deny plaintiffs' claim. One basis was that the claim was in excess of policy limits because plaintiffs demanded payment of replacement costs without repairing, restoring or replacing the insured dwelling and that plaintiffs were claiming total loss for personal property that Farm Bureau contended was not a total loss.

An insurer, acting in good faith, has a right "to litigate an open question of law or disputed facts for which there is reasonable or probable cause for belief." *Cohen v. Metropolitan Life Ins. Co.*, 444 S.W.2d 498, 506 (Mo.App.1969). The insurer may insist upon such a judicial determination of open questions of law or fact without incurring a penalty for so proceeding. *Id.; See also Hopkins v. North Am. Co. for Life & Health Ins.*, 594 S.W.2d 310 (Mo.App.1980).

*Frost v. Liberty Mut. Ins. Co.*, 828 S.W.2d 915, 920 (Mo.App.1992).

■ There was an open question of law or fact with respect to plaintiffs' claim that they were entitled to replacement costs without repairing, restoring or replacing their dwelling as evidenced in Point I. There was an open question as to whether one or both of the fires at the dwelling had been intentionally set. Farm Bureau had a reasonable suspicion that plaintiffs set the fire or had someone set it. *See Francka v. Fire Ins. Exchange*, 668 S.W.2d 189, 190 (Mo.App.1984). Farm Bureau had two investigators whose opinions were that there had been an intentionally set fire; that flammable liquid had caused the fire.

Farm Bureau presented evidence that plaintiffs owed various business debts. It contended plaintiffs' motive to destroy the residence and collect the insurance proceeds was to obtain funds with which they could pay the debts. It was error to submit plaintiffs' claim for vexatious refusal to the jury and thereby permit the jury to award plaintiffs damages for attorney fees. Instruction No. 10 should not be given at retrial.

■ Plaintiffs' appeal consists of a single point. They argue that the trial court erred in not providing the jury with a form of verdict with "a line for prejudgment interest" and in denying plaintiffs' motion to amend the judgment to add prejudgment interest. Plaintiffs contend they were entitled to interest on their damages. Farm Bureau argues that plaintiffs' claims were contingent, unliquidated and not ascertained; that, under those circumstances, prejudgment interest is not allowed. Because the issue is likely to occur upon retrial, it will be addressed.

"The general rule is that a policyholder is entitled to interest at the proper rate, at present 9%, § 408.020, RSMo Supp.1982, from the date that the claim became payable under the policy."[3] *Francka v. Fire Ins. Exchange*, 668 S.W.2d at 190–91. This occurs though parties to the dispute have not agreed upon the amount due under the policy. *See Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 7 (Mo. banc 1987). This court holds that plaintiffs are entitled to interest at the rate of 9% per annum on the damages under the actual cash value settlement provision of the policy. Prejudgment interest shall be calculated from the date plaintiffs' claim for actual cash value damages became payable under the policy terms.

■ In the event plaintiffs elect to repair, replace or restore their dwelling and the total costs of that endeavor exceed the

---

**3.** The current revision of § 408.020 is RSMo 1994. It is unchanged from § 408.020, RSMo Supp.1982.

face amount of the policy, i.e., the total costs exceed $98,000 less any applicable deductible, any excess would be an unliquidated demand. Plaintiffs are not entitled to interest on an unliquidated demand. *Fohn v. Title Ins. Corp.,* 529 S.W.2d 1, 5 (Mo. banc 1975). Damages in excess of the face amount of the policy would not be ascertainable by reference to any recognized standard. *See Catron v. Columbia Mut. Ins. Co.,* 723 S.W.2d at 7. *See also St. Joseph Light & Power Co. v. Zurich Ins. Co.,* 698 F.2d 1351 (8 th Cir.1983).

The judgment is reversed as to damages and as to the part of the judgment that determined Farm Bureau's counterclaim. The case is remanded for new trial as to damages on the claims presented by plaintiffs' petition. The case is likewise remanded as to Farm Bureau's counterclaim for declaratory judgment. The trial court is directed to determine and enter findings consistent with this opinion on the issues presented by the counterclaim. The issues raised by Farm Bureau's counterclaim shall be determined and written findings made thereon prior to jury trial as to damages on plaintiffs' claims. This court further holds that plaintiffs shall have 180 days next following filing of this court's mandate to make claims in excess of the actual cash value amount of the policy upon repairing, restoring or replacing the damaged or destroyed property and otherwise complying with the replacement cost provisions of the policy, including completion of the actual repair or restoration or replacement of that property.[4]

CROW, P.J., and SHRUM, J., concur.

---

4. Farm Bureau's brief suggests in the event this court interprets the policy to require completion of the repair, restoration or replacement in order to receive replacement cost proceeds, that the parties "may make a further claim within 180 days for any additional payments." This court agrees.