In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-25-00139-CR**
**EX PARTE NERBERT FRELOW JR.**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 25DCCR0366**

**MEMORANDUM OPINION**

Appellant Nerbert Frelow Jr. appeals the trial court's ruling on his pretrial habeas corpus application wherein he requested that the trial court reduce his bail from $1,000,000 to a "reasonable amount," and at the hearing before the trial court he asked the trial court to reduce his bail to $100,000. The trial court heard testimony and received evidence and entered an order reducing the bail to $750,000. Frelow contends the trial court erred by failing to reduce the bail to $100,000. We affirm.

Background

On March 26, 2025, a grand jury indicted Frelow for the first-degree murder of Donesha Buckner. The indictment alleged that, on or about January 18, 2025,

1

Frelow "with intent to cause seriously bodily injury to an individual, namely Donesha Buckner, hereafter styled the complainant, commit[ted] an act clearly dangerous to human life that caused the death of the complainant by shooting her with a firearm." *See* Tex. Penal Code Ann. § 19.02 (b)(2), (c). On March 27, 2025, Frelow filed an Application for Writ of Habeas Corpus Seeking Bail Reduction, arguing that his current bond of $1,000,000 was excessive, oppressive, and beyond his financial means and asking the trial court to reduce his bond from $1,000,000 to "a reasonable amount[.]" On April 9, 2025, the trial court held a hearing on the writ.

Evidence at the Hearing

Testimony of "Nancy"[1]

Frelow's wife Nancy testified that she works as a corrections officer for the Federal Bureau of Prisons, where she has worked for twenty-one years. Nancy testified that she and Frelow were married for ten years, then divorced, and they had recently remarried to each other. According to Nancy, Frelow had lived in Jefferson County all his life, and he was fifty-two years old at the time of the hearing. Nancy explained that several friends and relatives had accompanied her to the hearing that day.

Nancy testified that she had contacted bonding companies about Frelow's bond, and letters from two bonding companies were entered into evidence.

---

[1] We use a pseudonym to refer to Frelow's wife.

According to Nancy, the two bonding companies told her that their fee to make a million-dollar bond was $100,000, and she did not have $100,000 in cash or property that could be sold for $100,000. She also testified that she did not have friends or family who could loan her $100,000, and she could not get a loan for $100,000. The letters from United Bail Bonding and Allied Bail Bonds, addressed to Frelow's attorney, both quote a fee of $100,000 to post a $1,000,000 bond.

Nancy testified that Frelow worked doing freelance mechanical work and he would buy and sell cars, and he was also hired to be her father's caregiver after her father had a stroke. The defense offered Exhibits 3 and 4 into evidence, which Nancy testified were statements from Manifestation Home Healthcare Inc. of Frelow's earnings in 2024 and 2025. According to Nancy, the healthcare agency "would pay [Frelow] for four hours a day at a rate fee a week[.]" Frelow's W-2 for 2024 reflects gross earnings of $2,560. A pay statement for Frelow for January of 2025 reflects gross earnings for that month of $2,924. Nancy agreed that a bond of $1,000,000 for someone who made about $2,600 in 2024 was "oppressive[.]" She agreed that a bond of $100,000 or $50,000 would be "more manageable[]" and would be "hard[,]" but she could "do it."

Nancy identified Defense Exhibit 5 as character letters in support of Frelow. The letters are from Nancy's daughter (in Alexandria, Virginia), a former schoolmate (in Richmond, Texas), Frelow's daughter, Frelow's brother-in-law (in

3

Port Neches, Texas), Frelow's son-in-law, Frelow's son, a friend (in Beaumont, Texas), a pastor (in Port Arthur, Texas), six friends (four in Port Arthur, Texas, and one in Houston, Texas), and one letter is from Nancy.

Nancy agreed that Frelow voluntarily gave a statement to police, turned over his phone, and allowed the police to search his truck. She further agreed that Frelow had no "prior felony history[.]" Nancy described Frelow as a "nurturer[]" and "attentive[]" and she did not know him to be dangerous or aggressive. According to Nancy, Frelow did not have a relationship with Buckner before she died, and the only reason Frelow met Buckner was because he "was looking for someone to do his hair."

Testimony of Brandon Bess, Investigator

Brandon Bess testified that he is a private investigator based in Houston, and he is a retired Texas Ranger. He testified that he had reviewed four videos provided by the district attorney's office, the autopsy report, police reports, and search warrant affidavits in this case. According to Bess, he believed this was "a case of actual innocence[.]" Bess testified that, based on what he had reviewed, at some point, Buckner got out of Frelow's car, and Buckner was "extremely intoxicated." Bess did not believe that "a gunshot occurred in th[e] car[.]" Bess testified that he believed the evidence he had reviewed suggested that the shooting occurred "quite some time after Mr. Frelow dropped [Buckner] off after [an] altercation in his car[]" and that

4

Buckner had another altercation with someone else after she was dropped off at her apartment. In Bess's opinion, a personal recognizance bond should not be out of the question. On cross-examination, Bess agreed that gunshot residue was found inside Frelow's car and on Buckner.

The trial court reduced Frelow's bail to $750,000 and imposed the condition of house confinement with a GPS monitoring device. Frelow filed a Notice of Appeal.

## Issue

In his sole issue, Appellant argues that the trial court abused its discretion when setting bail at $750,000 because the amount is "excessive" and "unobtainable[.]" Appellant also argues that the State presented no evidence that he is a flight risk. Appellant requests that his bail be set at $100,000.

## Standard of Review and Applicable Law

We review the denial of an application for writ of habeas corpus under an abuse of discretion standard. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Klem*, 269 S.W.3d 711, 718 (Tex. App.—Beaumont 2008, pet. ref'd). We consider the entire record and review the facts in the light most favorable to the trial court's ruling. *Kniatt*, 206 S.W.3d at 664; *Klem*, 269 S.W.3d at 718. We afford almost total deference to the trial court's rulings on the application of the law to fact questions when the resolution of those questions turns on an evaluation of

5

credibility and demeanor. *Klem*, 269 S.W.3d at 718. If the trial court's resolution of the ultimate issues turns on an application of legal standards, we review the determination de novo. *Id.* In a habeas hearing, the trial court is the exclusive judge of the evidence and the credibility of the witnesses, and it may believe or disbelieve the testimony and evidence. *See Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006); *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996); *Ex parte Armstrong*, No. 09-14-00522-CR, 2015 Tex. App. LEXIS 3216, at *5 (Tex. App.—Beaumont Apr. 1, 2015, pet. ref'd) (mem. op., not designated for publication).

Similarly, we review a trial court's ruling on the setting of bail under an abuse of discretion standard of review. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (affording a trial court discretion to set bail); *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981). The trial court's ruling will not be disturbed if it is within the zone of reasonable disagreement. *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

The primary purpose of setting a pretrial bond is to secure the presence of a defendant in court for trial. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). The United States and Texas Constitutions prohibit excessive bail. U.S. Const. amends. VIII, XIV; Tex. Const. art. I, §§ 11, 13; *Ex parte Sabur-Smith*, 73

6

S.W.3d 436, 439 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (The right to reasonable bail is protected by the United States and Texas Constitutions.). The trial court should set bail sufficient to provide reasonable assurance the defendant will appear at trial, but not so high as to be oppressive. *See* Tex. Code Crim. Proc. Ann. art. 17.15(a)(1), (2); *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). Bail is excessive if it is "set in an amount greater than [what] is reasonably necessary to satisfy the government's legitimate interests." *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (citing *United States v. Salerno*, 481 U.S. 739, 753-54 (1987)). When setting the amount of bail, the trial court weighs the State's interest in assuring the defendant's appearance at trial against the defendant's presumption of innocence. *Id.* The amount of bail may be deemed oppressive when the trial court sets the bail at an amount "for the express purpose of forcing [a defendant] to remain incarcerated[.]" *Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.). Although a defendant's ability to make bail must be considered, it is not controlling. *See* Tex. Code Crim. Proc. Ann. art. 17.15(a)(4); *Ex parte Rodriguez*, 595 S.W.2d at 550. If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be eliminated, and the accused would be in the unique position of determining what his bond should be. *See Ex parte Nimnicht*, 467 S.W.3d 64, 68 (Tex. App.—San Antonio 2015, no pet.).

To determine whether the trial court abused its discretion, we consider the rules found in article 17.15 of the Code of Criminal Procedure as well as the factors set out in *Rubac*. *See* Tex. Code Crim. Proc. Ann. art. 17.15; *Rubac*, 611 S.W.2d at 849-50. The Texas Legislature has imposed the following statutory requirements:

> 1. Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

> 2. The power to require bail is not to be used to make bail an instrument of oppression.

> 3. The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense:
> >  (A) is an offense involving violence as defined by Article 17.03; or
> >  (B) involves violence directed against a peace officer.

> 4. The ability to make bail shall be considered, and proof may be taken on this point.

> 5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

> 6. The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021, shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

> 7. The citizenship status of the defendant shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15(a).

8

When setting the amount of bail, the trial court may also consider such factors as (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Rubac*, 611 S.W.2d at 849-50).

The nature of the offense and the circumstances surrounding the offense are factors in determining what constitutes reasonable bail. Tex. Code Crim. Proc. Ann. art. 17.15(a)(3). In considering the nature of the offense, it is proper to consider the possible punishment. *Ex parte Vasquez*, 558 S.W.2d 477, 479-80 (Tex. Crim. App. 1977). When the nature of the offense is serious and involves aggravating factors, a lengthy prison sentence following trial is probable. *Ex parte Hulin*, 31 S.W.3d 754, 760 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Therefore, pretrial bail must be set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy sentence might be to flee and fail to appear. *Id.* at 761; *see also Armstrong*, 2015 Tex. App. LEXIS 3216, at *6 (citing *Ex parte Hulin*, 31 S.W.3d at 760).

## Analysis

### Nature of Offense and Potential Punishment

The Court of Criminal Appeals has explained that the primary factors in determining what constitutes reasonable bail are the nature of the offense and the length of possible sentence. *See Rubac*, 611 S.W.2d at 849. The record reflects that Appellant was indicted for murdering Buckner by shooting her with a firearm and with the intent to cause serious bodily injury—a first-degree felony offense. *See* Tex. Penal Code Ann. § 19.02(b), (c). Murder is a violent offense. *See* Tex. Code Crim. Proc. Ann. art. 17.03(b-3)(2)(A). If convicted, Appellant faces a punishment range of five to ninety-nine years of confinement or life imprisonment and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. § 12.32.

The amount of bail set in this case is within the range of bail set in other first-degree felony cases. *See generally, e.g.*, *Valencia v. State*, No. 09-21-00065-CR, 2021 Tex. App. LEXIS 9487 (Tex. App.—Beaumont Nov. 24, 2021, no pet.) (mem. op., not designated for publication) (affirming $500,000 bail set for appellant charged with first-degree murder); *Ex parte Leos-Trejo*, No. 09-18-00113-CR, 2018 Tex. App. LEXIS 5655 (Tex. App.—Beaumont July 25, 2018, pet. ref'd) (mem. op., not designated for publication) (affirming $500,000 bail set for appellant charged with murdering his wife while the deceased's child was in the home); *Ex parte Coleman*, No. 09-17-00484-CR, 2018 Tex. App. LEXIS 2004 (Tex. App.—

10

Beaumont Mar. 21, 2018, no pet.) (mem. op., not designated for publication) (affirming $750,000 bail for appellant charged with capital murder); *Armstrong*, 2015 Tex. App. LEXIS 3216 (affirming $800,000 bail set for appellant charged with first-degree felony murder); *Ex parte Frazier*, No. 09-11-00620-CR, 2012 Tex. App. LEXIS 650 (Tex. App.—Beaumont Jan. 25, 2012, no pet.) (mem. op., not designated for publication) (affirming $1.9 million bail set for appellant charged with first-degree aggravated robbery). This factor weighs against reducing the amount of bail.

<u>Safety of Law Enforcement and the Community and Criminal History</u>

Another consideration in the bail analysis is the danger the defendant presents to the victim and to the community, and the criminal history for the defendant. Tex. Code Crim. Proc. Ann. art. 17.15(a)(5) and (6). The allegation that Frelow committed murder raises a generalized safety concern, but there is no evidence in the record that he poses an identifiable threat to any members of the community. *See Ex parte Taylor*, No. 12-24-00089-CR, 2024 Tex. App. LEXIS 4823, at *7 (Tex. App.—Tyler July 10, 2024, no pet.) (mem. op., not designated for publication). Nancy agreed that Appellant had no previous felony history, and she stated she had never known him to be aggressive. Nancy told the trial court that Appellant had lived in Jefferson County all his life, that he was a "nurturer" to her and her father, and numerous letters from family members and friends were entered into evidence that reflect their support of Appellant. On this record, these factors favor a reduction from

11

the initial one-million-dollar bail set by the trial court and may have been considered by the trial court when it decided to reduce the bail by $250,000. That said, we cannot say these factors would necessarily weigh heavily in favor of or against any additional reduction of the amount set for bail.

Financial Resources and Ability to Make Bail

A defendant's inability to make bail does not automatically render the amount excessive. *Valencia*, 2021 Tex. App. LEXIS 9487, at *13 (citing *Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. [Panel Op.] 1980); *Golden v. State*, 288 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)). "To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Ex parte Dueitt*, 529 S.W.2d 531, 532-33 (Tex. Crim. App. 1975) (concluding bail set was excessive where the evidence showed that appellant's and his family's funds were exhausted in obtaining his release on the original bail amount). Unless a defendant has shown that his funds have been exhausted, he must usually show that he made an unsuccessful effort to furnish bail before bail can be determined excessive. *See Leos-Trejo*, 2018 Tex. App. LEXIS 5655, at *13 (citing *Ex parte Willman*, 695 S.W.2d 752, 754 (Tex. App.—Houston [1st Dist.] 1985, no pet)). Vague references to an inability to make bond, in the absence of evidence detailing the accused's specific assets and financial

12

resources, do not support bail reduction. *Ex parte Grant*, No. 01-23-00889-CR, 2024 Tex. App. LEXIS 1617, at *11 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, no pet.) (mem. op., not designated for publication) (citing *Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

Appellant did not testify at the hearing, and he provided little evidence regarding his assets and financial resources. Appellant's wife Nancy testified that it would be "hard" to pay $10,000 on a $100,000 bond amount. Frelow's W-2 for 2024 shows he earned about $2,600 as a caregiver. However, Nancy also testified that Frelow worked as a "freelance mechanic" and he bought and sold cars, and no evidence was offered regarding his income from those pursuits nor any previous employment. Nancy testified that she has worked for the Bureau of Prisons for twenty-one years; however, no evidence was offered concerning her earnings or assets—nor that of family members. Nancy testified that she and Frelow did not have property that could be sold to pay bail, yet there was no testimony about what property the family owned.

The record contains no indication that the trial court set the reduced amount of bail for the sole purpose of ensuring that Frelow remains incarcerated pending trial. *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely

13

to prevent Montalvo from posting bail."). The evidence also does not support a conclusion that Frelow exhausted his funds in an effort to furnish bail, and this factor does not weigh in favor of reducing his bail. *See Dueitt*, 529 S.W.2d at 532-33; *Valencia*, 2021 Tex. App. LEXIS 9487, at **14-15; *Leos-Trejo*, 2018 Tex. App. LEXIS 5655, at *15; *Milner*, 263 S.W.3d at 149.

Conclusion

Frelow bears the burden of demonstrating that the amount of the bond is excessive. *See Rubac*, 611 S.W.2d at 849; *Rodriguez*, 595 S.W.2d at 550. We conclude that Frelow failed to meet his burden. Viewing the entire record in favor of the trial court's ruling, we conclude the trial court did not abuse its discretion by not further reducing the bond amount. *See* Tex. Code Crim. Proc. Ann. art. 17.15(a); *Rubac*, 611 S.W.2d at 850; *Coleman*, 2018 Tex. App. LEXIS 2004, at *6. We overrule Appellant's sole issue, and we affirm the trial court's order.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on July 16, 2025
Opinion Delivered July 23, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Chambers, JJ.

14